IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAUL DE LA ROSA, | |
| Plaintiff, | 4:14-CV-3055 |
| vs. | |
| TROOPER MARK WHITE, | MEMORANDUM AND ORDER |
| Defendant. | |

The plaintiff in this case, Raul De La Rosa, alleges that his Fourth Amendment rights were violated by the defendant, Mark White, a Trooper employed by the Nebraska State Patrol, when White searched De La Rosa's vehicle. *See* filing 1. This matter is before the Court on White's motion for summary judgment (filing 13), De La Rosa's cross-motion for partial summary judgment (filing 21), and White's motion to strike De La Rosa's evidence (filing 23). White's motion to strike will be denied, his motion for summary judgment will be granted in part and in part denied, and De La Rosa's motion for partial summary judgment will be denied.

BACKGROUND

The events resulting in this case began when White, who was on patrol duty, saw De La Rosa's pickup truck following another vehicle too closely. Filing 14 at 3.[1] Specifically, White timed De La Rosa's truck following 1.16 seconds behind another vehicle, and concluded that De La Rosa was following more closely than was "reasonable and prudent," in violation of the Nebraska Rules of the Road. Filing 14 at 3; *see* Neb. Rev. Stat. § 60-6,140(1). White pulled De La Rosa over. Filing 14 at 3. White approached the vehicle, and De La Rosa showed White his Arizona driver's license. Filing 14 at 3.

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1). As will be discussed in more detail below, De La Rosa has failed to comply with NECivR 56.1; accordingly, White's statement of undisputed material facts is considered to be admitted for purposes of these motions.

White asked De La Rosa to sit in the patrol unit, which he did. Filing 14 at 3. White asked De La Rosa questions about where he was traveling, his employment, and his criminal history. Filing 14 at 3. De La Rosa said that he was driving from Phoenix to Illinois for 5 days to visit some friends, that he was unemployed, and did not have a criminal record. Filing 14 at 4. White found, however, that De La Rosa had a "positive criminal history for destruction of property." Filing 14 at 4. That charge against De La Rosa had, in fact, not been prosecuted—when White asked De La Rosa about it, De La Rosa said that he had gone to court but that the prosecutor had said the charge would be dismissed. Filing 21-5 at 35. And the records available to White on his computer indicated the same thing. Filing 21-5 at 36-37.

White issued a warning citation to De La Rosa and informed him that he was free to go. Filing 14 at 4; filing 21-5 at 17. But as De La Rosa was getting out of the patrol vehicle, White asked De La Rosa if he had drugs or any other contraband in his vehicle. Filing 14 at 4. De La Rosa said he did not. Filing 14 at 4. White asked De La Rosa for permission to search his vehicle, but De La Rosa refused. Filing 14 at 5. So, White told De La Rosa he would be detained until a drug detection dog came to conduct an exterior sniff of the vehicle. Filing 14 at 5.

White called for a K9 unit, which arrived 50 minutes after being requested. Filing 14 at 5. The dog alerted to De La Rosa's vehicle, and White, along with the K9 trooper, conducted a search. Filing 14 at 5. They found marijuana shake and three firearms, and De La Rosa was arrested and charged with carrying a concealed weapon. Filing 14 at 6. But the charge was dismissed on the prosecution's motion after the county court granted De La Rosa's motion to suppress the evidence obtained from the search. Filing 21-4; filing 21-5 at 54.

De La Rosa sued White under 42 U.S.C. § 1983, alleging violation of his Fourth Amendment rights.[2] Filing 1 at 4-5. White has moved for summary

---

[2] The Court notes that the plaintiff's complaint does not specify whether the defendant was sued in his official or individual capacity. *See* filing 1 at 4-5. The Court is aware that in order to sue a public official in his or her individual capacity, a plaintiff in a § 1983 action must expressly and unambiguously state so in the complaint; otherwise, it will be assumed that the defendant is being sued only in his or her official capacity. *See Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007).* Nebraska courts, from which the plaintiff's suit was removed, impose the same pleading requirement. *See Holmstedt v. York Cnty. Jail Supervisor, 745 N.W.2d 317, 324 (Neb. 2008).* But the defendant here has waived any Eleventh Amendment immunity defense. *See United States v. Metro. St. Louis Sewer Dist., 578 F.3d 722, 724 (8th Cir. 2009).* And his answer treats the plaintiff's claim as individual capacity, raising a qualified immunity defense. *See* filing 3 at 2. Accordingly, the Court finds that the parties have, by implied consent, treated the plaintiff's claim as an individual capacity claim, and the Court will do the same. *Cf.* Fed. R. Civ. P. 15(b)(2).

judgment based on qualified immunity. Filing 13. De La Rosa has filed a cross-motion for summary judgment as to liability. Filing 21. And White has moved to strike De La Rosa's evidence, arguing that some of the evidence is inadmissible and that his exhibits are improperly authenticated. Filing 23.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION
### WHITE'S MOTION TO STRIKE

Before discussing the merits of the parties' cross-motions for summary judgment, the Court will address White's motion to strike, so that it is clear what evidence the Court is considering with respect to summary judgment. First, White complains that De La Rosa's personal affidavit, setting forth his version of events, "is replete with inadmissible evidence in the form of statements made without personal knowledge, statements consisting of hearsay, and general and conclusory statements . . . ." Filing 24 at 2-3. White's arguments are generally unpersuasive—it is not hard to see, for

example, how De La Rosa has "personal knowledge" of the events of a traffic stop that he was part of, or a court proceeding at which he was present. But in any event, the standard at the summary judgment stage is not whether the evidence offered would be admissible at trial, "it is whether it *could* be presented at trial in an admissible form." *See,* Fed. R. Civ. P. 56(c)(2); *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Here, White has not argued that foundation could not be laid for the averments in De La Rosa's affidavit to be presented in an admissible form at trial. And that is what Rule 56(c)(2) requires. *See Gannon*, 684 F.3d at 793.[3]

For similar reasons, the Court finds White's complaints about the authorization of De La Rosa's evidence to be unpersuasive. White contends that De La Rosa's exhibits were not authenticated by an affidavit, as required by NECivR 7.1(b)(2)(C). The Court does not condone De La Rosa's disregard for the basic requirements of the Court's rules, in this respect or any other (as will be discussed again below). But submission of unauthenticated documents in support of or opposition to a summary judgment motion no longer violates Rule 56 *per se. See Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *2 (W.D. Mich. 2011). Instead, under Rule 56(c)(2), the proper objection to unauthenticated evidence is that it cannot be authenticated, and therefore cannot be presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *see also Foreword Magazine*, at *2. White has not made such an objection, nor does White contend that De La Rosa's exhibits are actually not what they are represented to be. Under these circumstances, then, White is complaining about a matter that is more form than substance, and the Court declines to strike De La Rosa's evidence on that basis.

WHITE'S MOTION FOR SUMMARY JUDGMENT—QUALIFIED IMMUNITY

White's motion for summary judgment is predicated on his entitlement to qualified immunity. Qualified immunity shields public officials performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015). It gives government officials breathing room to make reasonable but mistaken judgments about open legal questions and protects all but the plainly incompetent or those who knowingly violate the law. *Id.* at 979-80.

---

[3] To be clear, however: De La Rosa's affidavit contains little of additional substance, and the Court would reach the same conclusion with respect to the parties' motions for summary judgment, even without considering the affidavit. Similarly, while the Court has referred to De La Rosa's exhibits to fill in some facts that were omitted from White's narrative, the Court would find that White's evidence, even if completely unrebutted, does not warrant summary judgment in his favor.

In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Parker*, 777 F.3d at 980. Clearly established law is not defined at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. *Id.*; s*ee Seymour v. City of Des Moines*, 519 F.3d 790, 798 (8th Cir. 2008). It is unnecessary to have a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Parker*, 777 F.3d at 980.

White's first argument is that De La Rosa's constitutional rights were not violated by the initial traffic stop because White observed De La Rosa violating a traffic law and, therefore, had a reason to stop him. The Court agrees, and will grant White's motion for summary judgment to the extent that De La Rosa is claiming a constitutional violation based on the initial stop. A traffic violation—however minor—creates probable cause to stop the driver of a vehicle. *United States v. Beck*, 140 F.3d 1129, 1133-34 (8th Cir. 1998). De La Rosa argues that the traffic stop was "clearly problematic" because, according to De La Rosa, following 1.16 seconds behind another vehicle is about 127 feet, which is "clearly a safe and prudent distance, particularly on a clear day with a dry road surface." Filing 21-1 at 1-2. But De La Rosa has offered no *evidence* (authenticated or otherwise) to support this argument, and White has offered evidence that De La Rosa was following too closely. *See* filing 15-1 at 2-3. There is even less evidence that White's judgment, even if mistaken, was unreasonable. *See Seymour*, 519 F.3d at 798. White is entitled to qualified immunity from this claim.

But De La Rosa's primary claim is that his constitutional rights were violated when White extended the traffic stop to await a drug detection dog, and White's arguments against this claim miss the mark. A police officer, incident to investigating a lawful traffic stop, may request the driver's license and registration, request that the driver step out of the vehicle, request that the driver wait in the patrol car, conduct computer inquiries to determine the validity of the license and registration, conduct computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and make inquiries as to the motorist's destination and purpose. *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001). And

the officer may detain the driver as long as reasonably necessary to conduct those activities and issue a warning or citation. *Id.* at 925.

If the response of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions. *Id.* at 926-27. But if the legitimate investigative purposes of the traffic stop are complete, further detention must be founded on a reasonable, articulable suspicion that criminal activity is afoot. *See, id.*; *Beck*, 140 F.3d at 1134. The officer must be aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed. *Johnson*, 664 F.3d at 237; *Seymour*, 519 F.3d at 796; *Jones*, 269 F.3d at 927; *Beck*, 140 F.3d at 1136; *see Parker*, 777 F.3d at 980. Only then does he have justification for a greater intrusion unrelated to the traffic offense. *Jones*, 269 F.3d at 926-27.

In evaluating whether a set of facts would give rise to reasonable suspicion, the Court must look at the totality of the circumstances and not just each independent fact standing alone. *Id.* at 927; *see Beck*, 140 F.3d at 1136. And the Court may consider any added meaning that certain conduct might suggest to experienced officers in the field, trained in the observation of criminal activity. *Jones*, 269 F.3d at 927; *see Beck*, 140 F.3d at 1136. The officer's reasonable suspicion cannot, however, be just a hunch, or based on circumstances which describe a large category of presumably innocent travelers. *Jones*, 269 F.3d at 927; *Beck*, 140 F.3d at 1136; *see Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992). While factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion—particularly when viewed by an agent who is familiar with the practices of drug smugglers and the methods used to avoid detection—it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation. *Beck*, 140 F.3d at 1137.

White identifies the following facts as the basis for his suspicion of criminal activity in this case:

- De La Rosa allegedly lied about having a criminal history because he said he had not "been in trouble with guns, drugs, or anything else" but he had been charged, in 2005, with destruction of property. Filing 15-1 at 3-4; filing 21-5 at 36.

- De La Rosa said he was going from Phoenix to visit friends in Illinois; according to White, Arizona is a source state for contraband and Illinois is a destination site. Filing 15-1 at 3.

- De La Rosa had a spare tire in the bed of his pickup truck, which White found "interesting" because it was not in a storage area under the bed of the truck, and sometimes contraband is transported in a spare tire. Filing 15-1 at 3.

- De La Rosa said he was unemployed and had earned money for his trip by working odd jobs, which to White "sounded like a cover story." Filing 15-1 at 4.

- De La Rosa's demeanor was "extremely laid back and relaxed," to the point that White felt like De La Rosa was being deceptive or "stand offish." According to White, people that he contacts are usually conversational during the stop, but De La Rosa was "closed off" and non-conversational. Filing 15-1 at 4.

Due to the totality of those circumstances, White "felt that there was possibly something illegal occurring with Mr. De La Rosa." Filing 15-1 at 4.

Perhaps so, but a feeling that "there was possibly something illegal occurring" is not the standard the Constitution requires, and the facts articulated here do not support a reasonable, articulable suspicion of criminal activity. To begin with, it is true that if questions reasonably related to a traffic stop create inconsistent answers from the detainee, then the officer's suspicion may be raised so as to enable him to expand the scope of the stop. *Jones*, 269 F.3d at 928. De La Rosa's denial of "trouble with guns, drugs, or anything else" is not, however, "the sort of inconsistency that warrants such a conclusion." *Id.* As the Eighth Circuit has explained,

> [t]here are numerous reasons why an innocent traveler initially would be reluctant to reveal to law enforcement authorities his criminal history; primarily for fear that it would have the exact effect that it had here, i.e., casting unwarranted suspicion upon that person. Also, an inconsistent answer regarding past conduct is less suspicious than an inconsistent answer regarding present destination or purpose. An inconsistent answer as to the former might cast a shadow of dishonesty upon the character of the motorist, but an inconsistent answer regarding the latter casts suspicion and doubt on the nature and legitimacy of the activity being investigated.

*Id.* Like the Eighth Circuit in *Jones*, the Court "fail[s] to perceive the connection" between a minor offense some 7 years earlier "and suspicion of interstate narcotics trafficking." *See id.* And in this case, it is far from clear

- 7 -

that there was any inconsistency to begin with: given the vagueness of White's question, it would hardly be surprising for someone to honestly believe that a *dismissed* charge wasn't worth mentioning. Although White denied seeing that the charge had not been prosecuted, that information was apparently available to him on his computer. Filing 21-5 at 36. And De La Rosa accurately explained this "criminal history" to White when he was specifically asked about it. Filing 21-5 at 35. In sum, in the absence of other factors suggesting criminal behavior, De La Rosa's failure to mention a dismissed charge from several years earlier could not generate a reasonable suspicion of criminal activity. *See Jones*, 269 F.3d at 928.

Nor is De La Rosa's travel from Phoenix to Joliet, Illinois particularly significant. Unusual or suspicious travel plans may give rise to reasonable suspicion, *see Beck*, 140 F.3d at 1139, but there was nothing particularly unusual about De La Rosa's journey. In *Beck*, the government proffered a similar argument: that reasonable suspicion could be founded in part on the defendant's travel from California (a drug source state) to North Carolina (a drug destination state). 140 F.3d at 1137. The Eighth Circuit rejected that argument, explaining that

> [b]ecause millions of law-abiding Americans reside in California and travel, mere residency in and travel from the State of California means the officer's "source state" factor must be considered in this context. Innumerable other Americans travel to that state or through there for pleasure or lawful business. Clearly, the vast number of individuals coming from that state must relegate this factor to a relatively insignificant role. Indeed, [the arresting officer] conceded at the suppression hearing that interstate motorists have a better than equal chance of traveling from a source state to a demand state.

*Id.* at 1137-38. Large cities are often identified as drug sources. *Id.* at 1138 n.3. The fact that an Arizona resident is driving from one of the country's biggest cities, Phoenix, to Joliet, in another of the country's most populous metropolitan areas, "is an extremely weak factor, at best, to suspect criminal activity." *See Beck*, 140 F.3d at 1138.

It is also unclear to the Court how the presence of a spare tire in the bed of De La Rosa's pickup could generate reasonable suspicion. This might or might not be unusual, but White's awareness that contraband is sometimes transported in a spare tire provides no basis for concluding that carrying a tire in the bed of a truck is particularly suspicious. (If anything, common sense would suggest that a tire containing contraband would more

likely be stored out of sight than in the bed of the truck.) Nor does it particularly engender suspicion that a traveler earned money through odd jobs, rather than permanent employment,.

Finally, White's observation of De La Rosa's demeanor provides almost no support for a reasonable suspicion of criminal activity. White had never met De La Rosa and had no measure by which to gauge De La Rosa's behavior during the traffic stop. *See*, *Jones*, 269 F.3d at 929; *Beck*, 140 F.3d at 1139. De La Rosa's apparent reticence to chat is far from the kind of unusual or exceptional behavior that might, along with other facts, support a finding of reasonable suspicion. *See Jones*, 269 F.3d at 929.[4]

In sum, the Court finds little in White's observations to warrant a reasonable suspicion of criminal activity. The Court is aware that a series of acts that appear innocent when viewed separately may warrant further investigation when viewed together—that "in some circumstances the sum may amount to more than its parts." *Jones*, 269 F.3d at 929; *Beck*, 140 F.3d at 1139. But the circumstances identified here, whether viewed individually or in combination, do not generate reasonable suspicion for De La Rosa's continued detention. *See id.* Accordingly, the facts—even if limited to the facts admitted by White—establish a violation of De La Rosa's constitutional rights under the Fourth Amendment.

Furthermore, the Court finds that De La Rosa's right to be free from unlawful detention under these circumstances was clearly established. It was and is well-known, black-letter law that an investigatory stop is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot. *Johnson*, 664 F.3d at 237. White cites no factually comparable cases suggesting that reasonable suspicion could exist under

---

[4] The Court also cannot help but observe that in other cases, the government has often relied on a traveler's nervousness during a traffic stop to support a finding of reasonable suspicion. *See*, *e.g.*, *Jones*, 269 F.3d at 928-29; *Beck*, 140 F.3d at 1139. Those arguments have sometimes, if not always, been successful, *see id.*, but here, White thought that De La Rosa was too "laid back and relaxed." Filing 15-1 at 4. In other words, De La Rosa apparently wasn't nervous enough. The Court declines to speculate on just what the appropriate level of anxiety would be for a traveler to escape this Catch-22.

White's affidavit also indicates that De La Rosa "tapped his index finger and thumb on his leg" while they were sitting in his cruiser waiting for the K9 unit, which White found suspicious because he thought it indicated that De La Rosa might be "nervous and trying to hide something." Filing 15-1 at 5. Leaving aside the question of whether De La Rosa was suspicious because he was nervous or because he wasn't nervous, the Court questions whether fidgeting with thumb and forefinger during a 50-minute wait in a police cruiser really indicates much of anything out of the ordinary. But the Court need not evaluate this observation as relevant to reasonable suspicion because it was made after White had already extended the traffic stop and summoned the K9.

these circumstances, and while the Eighth Circuit's decisions in *Jones* and *Beck* are not factually identical to this case, the Court views them as sufficiently on point to have placed that constitutional question 'beyond debate" for purposes of qualified immunity. *See Parker*, 777 F.3d at 980.

Instead, White relies on *United States v. Bloomfield* for the proposition that De La Rosa's constitutional rights were not violated because the stop—including the wait for the K9 unit—only took about an hour. 40 F.3d 910, 917 (8th Cir. 1994). That argument misunderstands the holding of *Bloomfield*. In *Bloomfield*, the Eighth Circuit found that a 1-hour detention to wait for a drug detection dog was reasonable—but that was because, the Court of Appeals found, the circumstances of that case *did* support a reasonable, articulable suspicion that the defendant's rental truck contained drugs. *Id.* at 919. Nothing in *Bloomfield* suggests that a 1-hour detention *without* reasonable suspicion is remotely reasonable.

Instead, the relevant rule is that "[a] lawful traffic stop that is extended in order to execute a canine sniff does not become an unconstitutional seizure where the stop is reasonably prolonged and constitutes only de minimis intrusions on a defendant's liberty." *United States v. Mohamed*, 600 F.3d 1000, 1005 (8th Cir. 2010). "[W]hen a dog sniff occurs after a very short lapse of time from when the purpose of the traffic stop has been completed, there is a de minimis intrusion, and therefore, under the general rule of reasonableness, the stop does not violate the Fourth Amendment." *Id.* (citing *United States v. Alexander*, 448 F.3d 1014, 1016 (8th Cir. 2006); *United States v. Martin*, 411 F.3d 998, 1002 (8th Cir. 2005); *United States v. $404,905.00*, 182 F.3d 643, 649 (8th Cir. 1999)).

But in *Mohamed*, there was a de minimis intrusion when the dog sniff was completed within 5 minutes of concluding a lawful stop. 600 F.3d at 1005. In *Alexander*, the canine sniff occurred 4 minutes after the completion of the stop. 448 F.3d at 1017. In *Martin*, the canine sniff occurred 2 minutes after the conclusion of the traffic stop. 411 F.3d at 1002. And in *$404,905.00*, a canine sniff completed 2 minutes after completion of the stop was also a de minimis intrusion. 182 F.3d at 649. Nothing in those cases, or in *Bloomfield*, suggests that a 50-minute detention is a de minimis intrusion, and the Court finds that in the absence of reasonable suspicion to extend the traffic stop, 50 minutes is too long to wait.

To summarize: the Court finds that White's continued detention of De La Rosa was unwarranted, and violated his Fourth Amendment rights; that the intrusion was not de minimis; and that the scope of De La Rosa's constitutional rights was clearly established under the circumstances. Accordingly, White is not entitled to qualified immunity in that regard. And the subsequent search of De La Rosa's vehicle was obviously a direct

consequence of De La Rosa's illegal detention. White's motion for summary judgment will be granted with respect to the initial traffic stop of De La Rosa's vehicle, but denied with respect to De La Rosa's continued detention and the subsequent search of De La Rosa's vehicle.

### DE LA ROSA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Having reached that conclusion, there is some force to De La Rosa's argument that the Court should enter summary judgment for him as to liability. But the Court declines to do so, because De La Rosa's motion for partial summary judgment is not supported as required by this Court's rules. NECivR 56.1 provides that a party moving for summary judgment

> must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law. <u>Failure to submit a statement of facts may be grounds to deny the motion.</u>

NECivR 56.1(a)(1) (emphasis in original). That statement of facts "should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (emphasis omitted). It "must describe the parties and recite all facts supporting the court's venue and jurisdiction[,]" and "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion." *Id.* (emphasis in original).

De La Rosa's four-page brief contains no separate statement of undisputed material facts. *See* filing 21-1. It muddles facts with legal argument, does not include all the relevant facts, and does not consistently cite to the record in support of the facts that are included. *See* filing 21-1. In short, it reflects little effort to abide by the clear requirements of this Court's local rules.[5] While the Court has permitted De La Rosa to avoid the consequences of that neglect with respect to White's motions, the Court's patience runs thin when it comes to De La Rosa's own motion for judgment as

---

[5] Nor, as noted above, did De La Rosa comply with the Court's rules in many other respects, including his opposition to White's motion for summary judgment or authentication of his own evidence.

a matter of law. Failure to follow the rules has consequences. Accordingly, De La Rosa's motion for partial summary judgment will be denied.[6]

IT IS ORDERED:

1.    White's motion to strike De La Rosa's evidence (filing 23) is denied.

2.    White's motion for summary judgment (filing 13) is granted in part and in part denied, as set forth above.

3.    De La Rosa's cross-motion for partial summary judgment (filing 21) is denied.

4.    This matter is referred to the United States Magistrate Judge for case progression.

Dated this 18th day of September, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[6] The parties should note, however, that the Court's denial of De La Rosa's motion does not change the fact that in the absence of a genuine dispute over material facts, the issue of whether White had a reasonable articulable suspicion to detain De La Rosa is still a question of law for the Court. See *Thompson*, 968 F.2d 759. Should this case proceed to trial, the Court will discharge its responsibility to decide that question. (It should be also be evident, from the foregoing discussion, which way the Court may be leaning on the issue.)